# United States District Court

NORTHERN DISTRICT OF GEORGIA

**ORIGINAL**

UNITED STATES OF AMERICA
v.

ELIZABETH COSS

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-176

FILED IN CHAMBERS
FEB 11 2013
U.S. MAGISTRATE JUDGE
N.D. GEORGIA

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning in or about June 2012 and continuing through August 2012, in Fulton County and elsewhere in the Northern District of Georgia, the defendant did,

conspire to obstruct and affect commerce by unlawfully obtaining United States currency from another person, with the consent of that person, said consent having been induced under color of official right and attempt to possess with intent to distribute cocaine, a Schedule II controlled substance

in violation of Title 18, United States Code, Section 1951 and Title 21, United States Code, Section 841.

I further state that I am a agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.        (X) Yes ( ) No

Signature of Complainant
James P. Hosty, IV

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

February 11, 2013                           at      Atlanta, Georgia
Date                                                City and State

Alan J. Baverman
United States Magistrate Judge
Name and Title of Judicial Officer                  Signature of Judicial Officer

AUSA Brent A. Gray

# AFFIDAVIT IN SUPPORT OF ARREST WARRANT
# FOR ELIZABETH COSS

I, James P. Hosty, IV, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 7 years. I am currently assigned to the Atlanta, Georgia office and work on the Civil Rights/Human Trafficking/Public Corruption Squad, which has the responsibility for investigating police corruption, among other federal crimes. I am a law enforcement officer of the United States, FBI, U.S. Department of Justice, within the meaning of Title 18, United States Code, Section 3052, which includes being an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses pursuant to Title 18, United States Code, Section 3052.

2. During my law enforcement career, I have participated in dozens of investigations relating to drug trafficking and police corruption. I have received specialized training in the methods and techniques used by drug trafficking organizations. I have debriefed many witnesses and confidential informants about drug trafficking generally, as well as the specific practice of employing corrupt law enforcement officers as part of a drug trafficking scheme. Through this training and experience, I have become familiar with many of the patterns of activity exhibited by drug traffickers. Except where I state that I am relying on my training and experience as described here, the information in this affidavit is based on information and belief, the source of that information and basis for that belief being my own investigation and information obtained by other law enforcement agents.

3. I submit this affidavit in support of a warrant for the arrest of ELIZABETH COSS for conspiracy to commit extortion under color of official right in violation of Title 18, United States

Code, Section 1951 and attempted possession with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841.

BACKGROUND OF INVESTIGATION

4. Based on my training and experience, I know that sophisticated drug trafficking groups distribute narcotics using a variety of covert methods that are designed to avoid detection by law enforcement and others. If detected, they are aware law enforcement will seize the drugs and money and arrest them. They also know that other drug dealers or criminal groups will rob them, if given a chance, stealing both the drugs and money. In the worst case, drug deals can turn violent.

5. Given these risks, drug traffickers occasionally attempt to enlist law enforcement officers to provide protection both for them and the drug transactions they conduct. In employing corrupt police officers at a drug deal, the traffickers hope to prevent rival groups from intervening and ultimately stealing their drugs and the drug proceeds. Additionally, they hope to keep legitimate law enforcement at bay by positioning a visible law enforcement presence at or near the drug transactions. In these cases, drug traffickers are willing to pay thousands of dollars to corrupt law enforcement officers who will provide protection for these transactions.

6. In August, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating a street gang in the Metro Atlanta area. During the course of that investigation, a confidential informant (CI-1) provided information about the gang's criminal activities. CI-1 told federal agents that police officers were involved in protecting the gang's activities, including their drug trafficking crimes. In general, these police officers, in uniform, driving police vehicles or otherwise displaying indicia of their positions, protected the drug dealers from being detected or arrested by other law enforcement officers and from being robbed by other drug dealers. The

information provided to federal agents by CI-1 regarding the use of law enforcement officers to protect drug deals is consistent with my experience and training in the investigation of similar cases.

7.  CI-1, who had been working with federal agents since August, 2011, communicated to gang members and their associates that CI-1 would need police protection for his/her upcoming drug transactions. Shortly thereafter, Shannon Bass, Jerry B. Mannery, Jr., and ELIZABETH COSS, none of whom are law enforcement officers, began identifying to CI-1 law enforcement officers interested in protecting his/her drug deals. Once those individuals were identified, information regarding the location and circumstances of the proposed drug deals was relayed to CI-1 and/or Shannon Bass, Jerry B. Mannery, Jr., ELIZABETH COSS for him/her to pass along to law enforcement officers who expressed an interest in protecting the drug transactions.

## FACTS ESTABLISHING PROBABLE CAUSE

8.  On five separate occasions, beginning in or about June, 2012 and continuing through August, 2012, ELIZABETH COSS provided protection for what she believed to be drug transactions involving multiple kilograms of cocaine.

9.  <u>Conversation During June 2012.</u> During June, 2012, ELIZABETH COSS, identified for a confidential informant (CI-1) police officers who would be interested in protecting illegal drug transactions in exchange for payment. One of the officers identified by ELIZABETH COSS was Atlanta Police Department (APD) Officer Kelvin D. Allen. CI-1, through ELIZABETH COSS, arranged for Allen to provide protection for a drug transaction on June 26, 2012.

10. <u>Drug Transaction on June 26, 2012.</u> On June 26, 2012, FBI and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents surveilled a meeting between ELIZABETH COSS, Allen and two confidential informants (CI-1 and CI-2), at Faith Barber Shop, 1230 Caroline Street, Atlanta, Georgia. CI-1 arrived in the parking lot in his/her vehicle and was followed shortly by CI-

2 who parked next to CI-1. CI-2 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, Allen, wearing his police uniform and a firearm in a holster on his belt, was sitting near ELIZABETH COSS, outside the barber shop, and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave CI-1 a backpack containing $3,500. CI-2 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, ELIZABETH COSS got into CI-1's vehicle and CI-1 gave ELIZABETH COSS the $3,500 payment. ELIZABETH COSS got out of CI-1's vehicle and went into the barber shop. These transactions were audio and video recorded.

11.     Drug Transaction on July 6, 2012. On July 6, 2012, ATF agents surveilled a meeting between ELIZABETH COSS, Allen, CI-1, and an undercover agent (UC-7) at Faith Barber Shop, 1230 Caroline Street, Atlanta, Georgia. Prior to CI-1 arriving, ELIZABETH COSS telephoned CI-1 and instructed him/her to park in a spot designated for handicapped parking. CI-1 arrived and parked as instructed and was followed shortly by UC-7 who parked next to CI-1. UC-7 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, Allen, wearing his police uniform and a firearm in a holster on his belt, was observed standing in front of the barber shop with ELIZABETH COSS; Allen appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided UC-7 a backpack containing three kilograms of counterfeit cocaine. In exchange, UC-7 gave CI-1 a backpack containing $3,500. UC-7 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. After the drug transaction, Allen entered the barber shop. Then, ELIZABETH COSS got into CI-1's vehicle and CI-1 gave ELIZABETH COSS the $3,500 payment. ELIZABETH COSS got out of CI-1's vehicle and went into the barber shop. These transactions were audio and video recorded.

12. <u>Drug Transaction on July 27, 2012.</u> On July 27, 2012, FBI and ATF agents surveilled a meeting between ELIZABETH COSS, Allen, CI-1 and CI-4 at Faith Barber Shop, 1230 Caroline Street, Atlanta, Georgia. Prior to CI-1 arriving, ELIZABETH COSS sent a text message to CI-1 and instructed him to park in a spot designated for a dry cleaning business. CI-1 arrived and parked as instructed and was followed shortly by CI-4 who parked next to CI-1. CI-4 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, Allen, wearing plain clothes, was observed standing in front of the barber shop with ELIZABETH COSS; Allen appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-4 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-4 gave CI-1 a backpack containing $3,500. CI-4 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. After the drug transaction, Allen left the area. Then, ELIZABETH COSS got into CI-1's vehicle and CI-1 gave ELIZABETH COSS the $3,500 payment. ELIZABETH COSS got out of CI-1's vehicle and walked to a Wells Fargo bank, 1270 Caroline Street, Atlanta, Georgia, where she made a cash deposit. These transactions were audio and video recorded.

13. <u>Conversation on August 8, 2012.</u> On August 8, 2012, CI-1 received a text message from ELIZABETH COSS that read "404-426-XXXX work" [actual number redacted]. CI-1 later learned from ELIZABETH COSS that this telephone number belonged to a Metropolitan Atlanta Rapid Transit Authority Police Department (MARTA PD) officer who was interested in protecting a drug transaction. FBI agents identified the telephone number as one used by MARTA PD Officer Marquez Holmes. CI-1, through ELIZABETH COSS, arranged for Holmes to provide protection for a drug transaction on August 9, 2012.

5

14. <u>Drug Transaction on August 9, 2012.</u> On August 9, 2012, FBI agents surveilled a meeting between ELIZABETH COSS, Holmes and two confidential informants (CI-1 and CI-4), at a Wells Fargo bank, 1270 Caroline Street, Atlanta, Georgia. CI-1 arrived at the bank parking lot and was followed shortly by CI-4 who parked next to CI-1. CI-4 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, Holmes, wearing his police uniform and a firearm in a holster on his belt, stood near ELIZABETH COSS and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-4 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-4 gave CI-1 a backpack containing $3,500. CI-4 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, ELIZABETH COSS got into CI-1's vehicle and CI-1 gave ELIZABETH COSS the $3,500 payment. ELIZABETH COSS got out of CI-1's vehicle, met Holmes in a different area of the parking lot and paid him a share of the $3500. These transactions were audio and video recorded.

15. <u>Drug Transaction on August 15, 2012.</u> On August 15, 2012, FBI agents surveilled a meeting between ELIZABETH COSS, Holmes and two confidential informants (CI-1 and CI-2) at a Best Buy store, 1210 Caroline Street, Atlanta, Georgia. CI-1 arrived at the store parking lot and was followed shortly by CI-2 who parked next to CI-1. CI-2 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, Holmes, in his MARTA PD patrol vehicle, wearing his police uniform and a firearm in a holster on his belt, was parked near CI-1's vehicle and appeared to be watching CI-1's vehicle. ELIZABETH COSS, in her vehicle, was also parked near CI-1's vehicle and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave CI-1 a backpack containing $3,500. CI-2 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, CI-1 drove his vehicle to a parking stall next to

ELIZABETH COSS. ELIZABETH COSS got into CI-1's vehicle and CI-1 gave ELIZABETH COSS the $3,500 payment. ELIZABETH COSS got out of CI-1's vehicle and both she and Holmes departed the parking lot. ELIZABETH COSS then met Holmes inside Shane's Rib Shack restaurant, 1221 Caroline Street. Inside, ELIZABETH COSS paid Holmes a share of the $3,500. These transactions were audio and video recorded.

16. <u>Meeting on August 17, 2012.</u> On August 17, 2012, FBI and ATF agents surveilled a meeting between ELIZABETH COSS, Allen and CI-1 at Faith Barber Shop, 1230 Caroline Street, Atlanta, Georgia. During that meeting, CI-1 provided ELIZABETH COSS and Allen each with a $1,000 bonus payment for providing protection for the drug transactions on June 26, July 6 and July 27, 2012. This meeting was photographed and audio recorded.

17. In communications leading up to and through the above-described drug transactions, the drug involved was described to ELIZABETH COSS as cocaine.

## CONCLUSION

18. Based on the foregoing, I submit there is probable cause to believe that ELIZABETH COSS conspired to commit extortion under color of official right in violation of Title 18, United States Code, Section 1951 and attempted to possess with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841.